UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


LINDA HORN, Administratrix       :      CIVIL NO. **1:06-CV-1038**
of the Estate of Barry Horn,     :
                                 :
              Plaintiff          :      (Chief Judge Kane)
                                 :
         v.                      :      (Magistrate Judge Smyser)
                                 :
ROBERT T. KLINE and              :
CUMBERLAND COUNTY,               :
                                 :
              Defendants         :


## REPORT AND RECOMMENDATION


I. Background and Procedural History.


        Barry Horn commenced this action by filing a complaint

on May 22, 2006.  On June 12, 2006, he filed an amended

complaint.  Barry Horn died during the course of the

proceedings in this case, and his wife, as administratrix of

his estate, was substituted as the plaintiff in this case.


        The defendants are Robert T. Kline, who is the Sheriff

of Cumberland County, and Cumberland County.  Barry Horn is a

former deputy sheriff of Cumberland County.  The claims in this

case are that Barry Horn was discharged from his position as a

deputy sheriff in violation of his First and Fourteenth Amendment rights.  More specifically, it is claimed that Barry Horn was discharged because he complained about being required to perform political duties such as selling tickets to and working at political events, being required to gather signatures so that political candidates could qualify to be on the ballot for elective positions and being required to sign off on the transfer of public monies into bank accounts to further the career of defendant Kline's wife.  It is also claimed that Barry Horn was discharged because he complained that defendant Kline was violating federal law and the rights of employees of the Sheriff's Office by secretly keeping unauthorized copies of employees' medical records for his own private purposes.  It is also claimed that Barry Horn was subjected to a different and more stringent disciplinary standard than the progressive disciplinary system that was customarily employed by the Sheriff's Office and that he was disciplined differently than was one of his coworkers.

The defendants filed an answer to the amended complaint on November 22, 2006.

Currently pending is a motion for summary judgment filed by the defendants.

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson*, *supra*, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297

4

F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S.
at 323).


III.  Undisputed Facts.


        Local Rule 56.1, Rules of Court, M.D. Pa., provides:


        A motion for summary judgment filed
    pursuant to Fed.R.Civ.P. 56, shall be
    accompanied by a separate, short and concise
    statement of the material facts, in numbered
    paragraphs, as to which the moving party
    contends there is no genuine issue to be tried.
        The papers opposing a motion for summary
    judgment shall include a separate, short and
    concise statement of the material facts,
    responding to the numbered paragraphs set forth
    in the statement required in the foregoing
    paragraph, as to which it is contended that
    there exists a genuine issue to be tried.
        Statements of material facts in support
    of, or in opposition to, a motion shall include
    references to the parts of the record that
    support the statements.
        All material facts set forth in the
    statement required to be served by the moving
    party will be deemed to be admitted unless
    controverted by the statement required to be
    served by the opposing party.


        The defendants filed a statement of undisputed material
facts in support of their motion for summary judgment.  The

5

defendants reference the parts of the record in this case that support their statements of material fact.

The plaintiff has filed a response to the defendants' statement of material facts.  The plaintiff denies some of the material facts set forth in the defendants' statement.  In addition, with respect to some of the defendants' statements of fact which she admits, the plaintiff qualifies her admissions with counterstatements of fact.  The plaintiff, however, has not included references to any evidence that supports her denials or counterstatements of fact.  In fact, the plaintiff has not submitted any summary judgment evidence in opposition to the defendants' motion.[1]  The plaintiff has failed to

---

[1] The plaintiff contends that she has not been able to conduct adequate discovery because of the defendants' failure to cooperate in the discovery process and because of the undersigned's failure to enlarge the discovery period.  The original case management order of October 23, 2006 established a discovery deadline of March 28, 2007.  An amended case management order was filed on February 16, 2007 setting forth a July 2, 2007 discovery deadline.  By an Order dated July 6, 2007, we denied the plaintiff's motion to further extend the discovery deadline, and by an Order dated August 1, 2007, we denied the plaintiff's motion for reconsideration of the Order of July 6, 2007.  We believe the plaintiff has had ample time to conduct discovery.  As to her contention that the defendants have not cooperated in discovery, by an order (doc. 68) dated July 6, 2007, we granted the plaintiff's motion to compel discovery and awarded the plaintiff attorney fees in connection with that motion.  We note that the defendants have filed an appeal (doc. 73) to the district court of the July 6, 2007 Order to the extent that it granted the plaintiff attorney's fees

appropriately controvert the defendants' statements of material fact.  Accordingly, the following material facts set forth in the defendants' statement of material facts are deemed to be admitted and undisputed for purposes of the defendants' motion for summary judgment.

Defendant Kline has been the Sheriff for Cumberland County since 1990. *Statement of Undisputed Material Facts Submitted by Robert T. Kline and Cumberland County at ¶1* and *Plaintiff's Counterstatement of Undisputed Material Facts at ¶1.*  The Sheriff is an elected position. *Id.*

The Chief Deputy Sheriff is the second-in-command to the Sheriff and the direct supervisor of deputy-sergeants such as was Barry Horn. *Id. at ¶7.*  Ronald Anderson served as Chief Deputy in January of 2006, at the time of Horn's termination. *Id. at ¶8.*  Edward Schorpp, Esquire, currently serves as the Solicitor for Cumberland County and the Cumberland County Sheriff's Office. *Id. at ¶10.*  Schorpp served as Cumberland

_____

and that the plaintiff has filed an appeal (doc. 89) to the district court of the order of July 6, 2007 denying an enlargement of the discovery period.  Those appeals are still pending before Chief Judge Kane.

County's Solicitor in January of 2006, at the time of Horn's termination. *Id. at* ¶11.

In early January of 2005, defendant Kline specifically informed Horn and several other Sheriff Office employees that county computers were not to be used for personal business. *Id. at* ¶3.  Specifically, defendant Kline advised Horn that the county computers were not to be used for operating a fantasy football league. *Id. at* ¶4.  Defendant Kline directed Horn to discontinue using his county computer for personal business, and further directed him to remove any personal documents from his county computer. *Id. at* ¶5.  In addition to this directive and order, Horn was also aware of the County's policy against personal use of county computers, which policy was reiterated to all county employees during the login process for their computers. *Id. at* ¶6.

In January of 2006, defendant Kline became aware that Barry Horn was using his county computer for conducting a fantasy football league. *Id. at* ¶2.  Defendant Kline became aware of this when documents reflecting this activity where found on Horn's computer while the Office was searching for an

electronic copy of an official letter that defendant Kline had asked Horn to draft. *Id.*

Upon learning of the continued use of county computers by Horn for a fantasy football league, defendant Kline called Horn in to meet with him, Anderson and Schorpp. *Id. at* ¶13. Defendant Kline asked Horn whether he remembered their conversation in which he had directed him not to use county computers for fantasy football. *Id. at* ¶14.  Horn responded that he did. *Id.*  Defendant Kline asked Horn whether or not he had fantasy football documents on his computer. *Id. at* ¶15. Horn responded that he did not. *Id. at* ¶16.  Defendant Kline asked Horn again if he had any fantasy football documents on his office computer, and Horn again responded no. *Id. at* ¶¶17 & 18.

Defendant Kline then handed Horn several documents relating to fantasy football and told him that he had obtained them from Horn's computer. *Id. at* ¶19.  Horn told defendant Kline that the documents he handed to him were from the prior year's fantasy football league and that he must have forgotten to remove them from his work computer. *Id. at* ¶20.  Defendant Kline asked Horn to look at the documents again and tell him

whether the documents were from the 2005-2006 or 2004-2005 fantasy football year. *Id. at* ¶21.  Horn confessed that the documents were related to the 2005-2006 fantasy football league. *Id. at* ¶22.  In confessing, Horn implicated other Sheriff Office employees, including Sergeant Zeigler, as participants in the fantasy football league. *Id. at* ¶23.

After meeting with Horn, defendant Kline, Anderson and Schorpp called in Sergeant Zeigler to discuss the issue. *Id. at* ¶24.  Defendant Kline asked Zeigler if he played fantasy football with Horn. *Id. at* ¶25.  Without hesitation, Zeigler responded that he did in fact play fantasy football with Horn. *Id. at* ¶26.  Zeigler was asked if he had any fantasy football documents on his computer, and he responded in the affirmative. *Id. at* ¶27.

After these interviews and gathering further documentation, defendant Kline took a day or two to consider his decision as to any discipline to be imposed. *Id. at* ¶28. After consulting with Anderson, Schorpp and the Human Resources director, defendant Kline made the decision to terminate Horn's employment. *Id. at* ¶29.  Horn was terminated for willful misconduct, in lying about having personal documents on his

county computer, and disobedience to orders, in disobeying
defendant Kline's order that he was not to have personal
documents on the computer. *Id. at ¶*30.

Horn was one of three sergeants in the office who were
subordinate only to defendant Kline and Anderson. *Id. at ¶*31.
As essentially the third-in-command, it was necessary that Horn
be absolutely trustworthy, loyal and capable of commanding the
respect of both the Sheriff and subordinate officers. *Id. at
¶32.* Horn's evasiveness and deliberate misrepresentations when
questioned about the fantasy football documents were in direct
contrast to these desired traits. *Id. at ¶*33.

In contrast, although Zeigler also was engaging in the
fantasy football league, he was forthright in admitting his
transgression and understanding of policy. *Id. at ¶*34.  Because
of his truthfulness, Zeigler was not terminated. *Id. at ¶*35.
Zeigler was, however, verbally disciplined for his personal use
of a county computer in contravention of county policy. *Id. at
¶36.*

In the five years prior to Horn's termination, no
employee of the Sheriff's Office was ever terminated,

suspended, or otherwise disciplined for refusing to buy tickets to the annual Republican Party picnic or the annual Republican Party dinner. *Id. at* ¶37.  Defendant Kline never threatened Horn with any adverse employment action within the five years prior to his discharge if he did not buy or persuade other employees to buy tickets to either the Republican Party dinner or the Republican Party picnic. *Id. at* ¶38.  Defendant Kline did not take any adverse action against Horn for his conduct in discussing legal requirements under the HIPPA laws with regard to the medical records of the Sheriff's Office employees. *Id. at* ¶39.  In fact, all employees were trained as to HIPPA's requirements regarding medical records. *Id. at* ¶40.

There were no reasons for Horn's discharge other than his disobedience of defendant Kline's directive regarding playing fantasy football games at work and his untruthful statement to defendant Kline when asked about participation in the Fantasy Football League. *Id. at* ¶41.

IV. Discussion.

The plaintiff claims that the defendants terminated Horn's employment because he complained about being required to

12

perform political and nongovernmental duties and because he complained about defendant Kline secretly keeping unauthorized copies of employees' medical records for his own private purposes.  The plaintiff also claims that he was required to engage in political activities in which he did not wish to participate.

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). Public employers cannot silence their employees simply because they disapprove of the content of their speech. *Id.* at 194. On the other hand, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968).  "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

A public employee's claim of retaliation is evaluated under a three-step process. *Green v. Phila. Hous. Auth.,* 105 F.3d 882, 885 (3d Cir. 1997). First, the plaintiff must establish that the activity in question was protected. *Id.* Second, the plaintiff must establish that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996). Lastly, the public employer can rebut the claim by demonstrating that it would have reached the same decision even in the absence of the protected conduct. *Baldassare, supra,* 250 F.3d at 195.

The First Amendment also generally protects a public employee from political patronage discrimination. *Galli v. New Jersey Meadowlands Comm'n,* 490 F.3d 265, 270-71 (3d Cir. 2007)("[T]he First Amendment protects public employees not only from politically motivated discharge, but also from promotion, transfer, recalls, and other hiring decisions conditioned on political affiliation, unless the government can demonstrate that party affiliation is a proper requirement for the position."). To establish a *prima facie* case of political patronage discrimination, a plaintiff mush show: 1) that he was employed at a public agency in a position that does not require

14

political affiliation; 2) that he was engaged in constitutionally protected conduct; and 3) that this conduct was a substantial or motivating factor in the government's employment decision. *Id.* at 271.  Constitutionally protected conduct includes failure to support a political party or candidate. *Id.* at 273-74.  Once the plaintiff establishes a *prima facie* case, the defendant can avoid liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity. *Id.*

The undisputed facts establish that Horn was terminated because of his disobedience of defendant Kline's directive regarding playing fantasy football games at work and because of his untruthful statement to defendant Kline when asked about participation in the Fantasy Football League.  The plaintiff, therefore, can not establish that Horn was terminated for his speech or because of his opposition to participating in political activities.  Therefore, the defendants are entitled to summary judgment on the plaintiff's First Amendment claims.

The plaintiff also claims that Horn was denied equal protection because he was subjected to a different and more stringent disciplinary standard than the progressive disciplinary system that was customarily employed by the Sheriff's Office and because he was disciplined differently than was one of his coworkers.

"Under the Fourteenth Amendment, no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 151 (3d Cir. 2005)(quoting U.S. Const. amend. XIV, §1).  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *Id.*  In order to establish a viable equal protection claim,  a plaintiff must show an intentional or purposeful discrimination.  *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).

Since the plaintiff does not allege that Horn belonged to a protected class, we assume that the plaintiff's equal protection claim is based on the "class of one" theory announced in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000).  In order to establish a "class of one" equal

protection violation, the plaintiff must establish: 1) that the
defendants treated Horn differently from others similarly
situated; 2) that they did so intentionally, and 3) that there
was no rational basis for the difference in treatment. *Hill v.
Borough of Kutztown,* 455 F.3d 225, 239 (3d Cir. 2006).

The plaintiff has not presented any evidence that he
was disciplined differently than any other similarly situated
Sheriff's Office employee.  As to Sergeant Zeigler, the
undisputed facts establish that Zeigler was not similarly
situated to Horn in that, unlike Horn, Zeigler immediately
admitted to playing fantasy football and having fantasy
football documents on his computer.  Moreover, there was a
rational basis for treating Horn differently than Zeigler in
that Horn initially lied about the matter whereas Zeigler did
not.

The defendants are entitled to summary judgment on the
plaintiff's equal protection claim.

17

V. Recommendation.


Based on the foregoing, it is recommended that the defendants' motion (doc. 77) for summary judgment be granted.


                                        _**/s/ J. Andrew Smyser**_
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  October 5, 2007.